STEINER CONSTRUCTION COMPANY, INC. *v.*
COMPTROLLER OF TREASURY

[No. 120, October Term, 1955.]

454

*Decided April 5, 1956.*

The cause was argued before BRUNE, C. J., and DELA-PLAINE, COLLINS and HENDERSON, JJ.

*D. Heyward Hamilton, Jr.,* with whom were *John S. Stanley* and *Hershey, Donaldson, Williams & Stanley* on the brief, for the appellant.

*Stedman Prescott, Jr., Assistant Attorney General,* and *Edward F. Engelbert, Staff Attorney, Retail Sales Tax Division,* with whom was *C. Ferdinand Sybert, Attorney General,* on the brief, for the appellee.

BRUNE, C. J., delivered the opinion of the Court.

This is an appeal from an order of the Baltimore City Court, which affirmed a determination by the Comptroller of the Treasury of Maryland (the "Comptroller") upholding the assessment of retail sales and use taxes against Steiner Construction Company, Inc. ("Steiner"), the appellant. The asssessment was made on the basis of the cost to Steiner of items of personal property which were purchased by Steiner and were used in the performance of forty-seven different contracts between Steiner and The Baltimore & Ohio Railroad Company (the "Railroad") entered into between July 1, 1947, and November 20, 1950. Under these contracts Steiner agreed to make alterations, improvements or repairs to real property belonging to the Railroad.

All of the facts are set forth in a stipulation between the parties and in sundry exhibits filed therewith and as a part thereof, and are agreed to be taken as true and fully proven for purposes of this case. This stipulation and the accompanying exhibits were before the Comptroller and also before the trial court.

Item 10 of the stipulation states (in part) that "Under the provisions of the Maryland Retail Sales Tax Act the Comptroller of the Treasury issued to the Railroad Company in July of 1947, his Exemption Certificate No. 151." This certificate states that "The Baltimore & Ohio Railroad Company, Tax Dept., Baltimore, 1, Md. is Exempt from Payment of Sales Tax on all Purchases of Taxable Personal Property and Services Purchased for use in Carrying on the Work of the Organization." For the purposes of this case it is conceded that the Railroad is exempt from Maryland sales and use taxes. Under the 1947 Supplement to the 1939 Code, Article 81, Section 310 (b), tangible personal property expressly exempted from the retail sales tax under Section 261 of the same Article was also exempt from the use tax. (For corresponding provisions of the 1951 Code see Article 81, Sections 370 (b) and 322.)

With the Railroad's exemption conceded, two questions arise:

*First.* Is a contracting company exempt from Maryland sales and use taxes on building materials purchased by it in order to carry out contracts for alterations, additions or repairs to real property owned by a corporation which is exempt from such taxes?

*Second.* Is a contracting company exempt from Maryland sales and use taxes on building materials purchased by it in order to carry out contracts for alterations, additions or repairs to real estate owned by a corporation exempt from such taxes, if these contracts provide that the contracting company is to sell such materials to the owner at agreed prices?

During the period within which the contracts involved in this case were entered into (July 1, 1947—November 20, 1950), there was no difference in the substantive provisions of the Retail Sales Act and of the Use Tax Act applicable to these contracts, and the Rules promulgated by the Comptroller involved herein are stated to be under both Acts.

1. *The Exemption Claimed by the Contractor on the Basis of the Owner's Exemption.*

The Retail Sales Tax Act, (1947 Supplement to the 1939 Code, Article 81, Section 259 (f) (3) ; 1951 Ed., Article 81, Section 320 (f) (3)) and the Use Tax Act, (1947 Supplement to the 1939 Code, Article 81, Section 308 (h) (2) ; 1951 Ed., Article 81, Section 368 (h) (2)), as applicable to this case, both define a "sale at retail" as including the "sale of building materials to contractors, builders or landowners for use or resale in the form of real estate."

Steiner bases its claim of exemption on the Railroad's exemption and contends that it resold the building materials here involved to the Railroad as tangible personal property. The Comptroller contends that Steiner, the contractor, did not purchase these materials for the purpose of reselling them to the Railroad, but for the purpose of fulfilling its contracts with the Railroad which

were to furnish to the Railroad a finished product in the form of real estate. The Comptroller accordingly contends that the contractor was the actual user and consumer of the materials involved and that the contractor is subject to the sales and use taxes in respect thereof.

The appellant starts with the premise that the Railroad is entitled to an exemption under Article 81, Section 261 (f) of the 1947 Supplement to the 1939 Code, Article 81, Section 322 (f), (Code 1951), on the ground that sales to the Railroad are not within the taxing power of this State under the Constitution of the United States. This claim is based upon the original charter of the Railroad and the Settlement Act of 1878. By reason of the concession above referred to, the Railroad's right to an exemption from sales and use taxes is not an issue in this case.

The appellant's principal argument on this branch of the case is based upon the holding in *John McShain, Inc. v. Comptroller*, 202 Md. 68, 95 A. 2d 473, that an exemption from sales and use taxes granted under Section 261 (i) of Article 81 of the 1947 Supplement to the 1939 Code (Section 322 (i) of the same Article of the 1951 Code) to a charitable, scientific or educational institution of property purchased for use in carrying on the work of the institution, was available to a building contractor purchasing materials to be incorporated in a building which the contractor was constructing for the use of such an institution.

In reaching this conclusion the Court took into consideration both the text of the statute and Rule 70 promulgated by the Comptroller, which undertook to construe the exemptions granted under sub-sections (a) and (i), respectively, of Section 322, Article 81, of the 1951 Code (Section 261 of Article 81 of the 1947 Supp. to the 1939 Code) to the State and its political subdivisions and to religious, charitable, scientific, literary or educational institutions, and, to some extent, the exemption granted under sub-section (f). The first sentence of the first paragraph of Rule 70 reads as follows:

"Contractors who are performing jobs for the State of Maryland or any of its political sub-divisions or a non-profit religious, charitable, scientific, literary or educational institution or organization on a lump-sum basis are not required to pay the tax on materials and supplies which will be incorporated into the job." The second paragraph states that contractors working on such jobs must pay the tax on all equipment purchased to perform them. The third paragraph reads as follows: "Contractors who are working on lump-sum, cost plus a fixed fee, or cost plus contracts containing an upset or guarantee clause with the Federal Government must pay the tax on all personal property which they purchase in fulfilling such contracts." (The provisions relating to cost plus contracts were added by an amendment effective on July 15, 1950.)

Judge Henderson, writing the opinion for the Court in the *McShain Case,* said:

"The most serious objection to the allowance of the exemption is that the section, in terms, applies to sales made directly to the person operating, and not to a contractor with such person. We think, however, that it would be a strained construction to hold that persons operating the activities mentioned should be entitled to the exemption when they purchase directly from a supplier, but not when they acquire the property through an intermediary contractor. The Comptroller's regulation is very specific on the point, and while it is conceded that the Comptroller lacks the power to create an exemption beyond that granted by the statute, his interpretation is entitled to great weight as an administrative construction acquiesced in by the legislature. Cf. *Tidewater Fisheries v. Sollers,* 201 Md. 603, 95 A. 2d 306, * * * and cases there cited. Since 1949, there must have been a considerable volume of new construction for hospitals and other institutions within the exempted classes who have received the benefit of the exemption. We are not prepared to say that the Comptroller was wrong in failing to collect the sales tax on items of personal

property going into these buildings or additions merely because they were contracted for rather than built by the owners. To now hold that all such transactions were taxable would subject many persons to tax claims on transactions completed in good faith in reliance upon the administrative ruling." (202 Md. 72-73, 95 A. 2d 474-475.)

The actual contracting party in the *McShain Case* was the United States of America, which was acting for one of its agencies, the National Institute of Health. The exemption was sustained not because of any immunity of the United States from taxation by a State, but because of the intended use of the building. This Court said (at page 74 of 202 Md., page 475 of 95 A. 2d) : "The controlling factor upon which the exemption is based is not the instrumentality that does the purchasing, but the use of the items purchased in carrying on in Maryland the work to be promoted."

Since *Alabama v. King & Boozer,* 314 U. S. 1, decided more than eleven years before the *McShain Case* (and referred to therein) it has been established that there is no prohibition under the Federal Constitution against a State sales tax upon materials bought by a contractor in order to carry out a "cost-plus" building contract with the United States. The companion case of *Curry v. U. S.,* 314 U. S. 14 (also cited in the *McShain Case*), held that the contractors were not exempt from the Alabama use tax on materials purchased outside the State for use in performing the same "cost-plus" contract with the United States. It is not contended that any constitutional immunity from State taxation to which the Railroad may be entitled is greater than that to which the United States is entitled.

The appellant does argue earnestly that the reasoning of the *McShain Case* is applicable to any owner of real estate who or which is exempt from sales and use taxes, regardless of whether the exemption is founded upon sub-section (i) or some other sub-section of what is

now Section 322 (formerly 261) of Article 81 of the Code (1951).

As a matter of the construction of the statute we think that the *McShain Case* not only fails to support, but actually runs counter to, the appellant's contention. If the immunity from sales and use taxes of the owner of real estate had been the criterion of the exemption of the building contractor, the *McShain Case* could easily have been decided on the basis of sub-section (f) of Section 322 (formerly 261) of Article 81. It was not so decided; on the contrary, the Court relied upon sub-section (i). Rule 70, which was given great weight in construing sub-section (i) explicitly refused (by its third paragraph) to treat building contractors performing certain types of contracts with the United States Government on the same basis as contractors performing similar contracts with persons entitled to exemptions under sub-sections (a) and (i). The Comptroller sought to use the third paragraph of the Rule as a somewhat back-handed way of limiting the exemption to contractors who were not working for the Government. This Court rejected that argument and, as has been pointed out, upheld the exemption because the use involved fell within sub-section (i), saying, "We think it is quite immaterial that the activity is conducted by a federal agency, rather than by a private agency or by the State." Later the Court added, "The exemption recognized in the first paragraph [of Rule 70] depends upon the use to which the property is put, and not upon the immunity of the user, even though such immunity does not extend to its contractors under other circumstances."

In the instant case there is no use comparable to that involved in the *McShain Case*. The exemption relied upon by the appellant is contained in Section 261, paragraph (f) of Article 81 of the 1947 Supplement to the 1939 Code [1951 Edition, Article 81, Section 322 (f)]. It covers "Sales which are not within the taxing powers of this State under the Constitution of the United States." This is no more than an express recognition of the in-

escapable; it manifests no legislative intent to further the activities of the beneficiaries of this unavoidable exemption. Consequently, there is no such foundation as in the case of charitable or educational institutions for deducing a legislative intent which would support a broad interpretation of the exemption. Likewise, there is no such consideration as might prompt the State to exempt itself or its political subdivisions from paying State taxes.

The appellant also contends that Rule 70 adopts the view that the contractor makes a resale of tangible personal property to the ultimate purchaser, the owner of the realty. We do not think this is a correct construction of Rule 70. Such a construction would run contra to the theory upon which a sale at retail was defined under both the Retail Sales Tax Act and the Use Tax Act as including the "sale of building materials to contractors * * * for use or resale in the form of real estate." Building materials when incorporated into a building lose their character as tangible personal property and are transformed into real estate. On this matter (and apart from the second question in this case), what was said in *State v. Christhilf*, 170 Md. 586, 591, 185 A. 456, 458, seems controlling: "It is the contractor or builder who is the ultimate user or consumer of the materials which in one of these cases are converted and fabricated into a building and in the other into a road." Just before this the Court had said: "We cannot agree with the view that there is a transfer of title to so many feet of lumber, kegs of nails, thousands of brick, perches of stone, cubic yards of concrete, or other items of materials entering into a lump sum contract, for a complete job or structure, which, when erected on the customer's land, is as much real property as the land itself and is by no sort of definition or reasoning 'tangible personal property'."

The fact that the incidence of the emergency gross receipts tax of 1935 was different from that of the present Retail Sales Tax Act does not detract from

the force or applicability of the above quotation.

Similar results have been reached in other States. *Troop Roofing Co. v. Dealers Supply Co.*, 91 Ga. App. 880, 87 S. E. 2d 358; *Harding v. Oklahoma Tax Comm.*, Okla., 275 P. 2d 264; *Northern Improvement Co. v. Engen*, N. D., 68 N. W. 2d 463.

On the first question in this case we think that the different types of contracts are of little significance, and we shall reserve consideration thereof for the second phase of the case.

The *McShain Case* recognized an exemption which the General Assembly thought it wise to grant. It might be perfectly logical to carry back realty owners' exemptions to contractors in all cases, but this has not been done, as the *McShain Case* itself shows. A contention somewhat similar to that of the present appellant along this line was advanced but rejected in *Comptroller v. Joseph F. Hughes & Co. Inc.*, 209 Md. 141, 120 A. 2d 343, in which the opinion was filed on the same day that the instant case was argued. In that case contractors doing work for the City of Baltimore and other political subdivisions of the State of Maryland sought exemption from sales and use taxes on items of personal property purchased to fulfill their contracts with various municipalities, which were consumed in the work and were not incorporated in the finished product. The Court, again speaking through Judge Henderson, there said:

"The appellee argues that the legislative purpose in exempting sales to the State and its political sub-divisions, as well as to charitable and other institutions of the types mentioned, was to enable them to obtain buildings and other property used in their governmental capacity, or for the furtherance of their charitable purposes, at a lower cost, and that purpose would be served by the exemption of expendable items as well as of items that survive the completion of the structures. This may be true, but in construing tax statutes the courts do not now attach much weight to arguments based on the economic incidence of the tax. Cf. *State of Alabama v.*

*King & Boozer,* 314 U. S. 1, 9, 62 S. Ct. 43, 86 L. Ed. 3. That same argument might be made as to items which go into the contractor's inventory as a part of his capital assets or equipment, and suffer deterioration and depreciation during the progress of the work. In any event it is a matter of legislative policy as to where the line should be drawn."

Later, in answering an objection based upon alleged discrimination—an argument which is also made in the instant case—the Court said that "inconsistency in the treatment accorded different classes of taxpayers, whether due to legislative action or administrative interpretation, furnishes no ground for invalidating an interpretation which we find to be sound under the facts of the instant case."

It is hardly necessary to repeat the familiar rule that exemptions from taxation are narrowly construed. *Suburban Propane Gas Corporation v. Tawes,* 205 Md. 83, 106 A. 2d 119.

We conclude that, apart from any question of the resale of tangible personal property as such, as distinguished from the incorporation of such property into a finished structure constituting real estate, the Comptroller correctly determined that the appellant was not entitled to an exemption in this case, and that the Baltimore City Court was correct in affirming his determination.

2. *The Exemption Claimed on the Basis of Resale of Tangible Personal Property.*

At the outset we may note that this question is not discussed in the opinion of the Judge of the Baltimore City Court. We are informed that it was, however, presented by the appellant in the lower court. It must have been determined adversely to the appellant; otherwise, the determination of the Comptroller could not have been fully affirmed. We, therefore, think it is properly before us for consideration.

Contracts of several different types are involved in this case. All of them call for alterations, additions or

repairs to be made by Steiner to real property belonging to the Railroad.

Paragraph 9 of the Stipulation states that all but two of the 47 contracts contained a provision by which Steiner was obligated to sell to the Railroad all materials required for the performance thereof. In 29 contracts there was a breakdown of the total contract price into a stated figure for the material purportedly sold thereunder and into another stated figure for the labor in performing the contract. Eighteen contracts contain no breakdown or separation of the figures representing the price of material sold and the cost of labor, but 15 of these 18 obligate Steiner to sell the materials at actual cost. The other 3 out of these 18 (including the two exceptions above mentioned) contain a provision obligating Steiner to carry out the work on the basis of time and material or labor and material. Six of the contracts, 3 of which are among the 29 and 3 of which are among the 15 above described, contain a total contract price which is stated to be the maximum.

The 29 contracts above mentioned account for more than $68,000, or about 80%, of the total cost of materials upon which the assessment in this case was made. Some of these 29 were lump-sum contracts, some were cost plus a fixed percentage of cost, and some were cost plus a fixed fee. In some instances the price of materials was stated as a specified amount, in some as an estimated figure and in some at market values. In each instance a figure was extended to indicate the cost.

Of the total of 47 contracts it is stated in Paragraph 8 of the Stipulation that 20 provided for lump sum payments, 23 for the payment of cost plus a fixed percentage of cost and 4 for the payment of the actual cost plus a fixed fee in a specified amount. The Comptroller relies heavily upon the characterization of the contracts contained in this paragraph of the Stipulation and in similar language in Paragraph 13 as precluding any of the contracts from falling within Class (d) under his Rule 53 (which we shall take up in a moment). We do not

think, however, that the terms of these paragraphs prevent consideration of the terms of the contracts themselves, excerpts from which were included in an exhibit filed with and as a part of the Stipulation.

The appellant relies upon Rule 53 as an interpretation of Sections 259 (f) (3) and 308 (h) (2) of Article 81 of the 1939 Code, 1947 Supplement (Sections 320 (f) (3) and 368 (h) (2) of Article 81 in the 1951 Code), and claims that all but two of the contracts fall within Class (d) of the types of contracts therein described and are exempt thereunder.

Rule 53 undertakes to interpret and apply the provisions of the Sections just referred to which defined as sales at retail the "sale of building materials to contractors, builders or landowners for use or resale in the form of real estate." These four classes are described as follows:

"(a) Those contracts in which the contractor or sub-contractor agrees to furnish materials and supplies and necessary services for a lump sum;

(b) Those contracts in which the contractor or sub-contractor agrees to furnish the materials and supplies and necessary services on a cost-plus basis;

(c) Those contracts in which the contractor or sub-contractor agrees to furnish the materials and supplies and necessary services with an upset or guaranteed price which may not be exceeded; and

(d) Those contracts in which the contractor or sub-contractor agrees to sell materials and supplies at an agreed price or at the regular retail price and to render the service either for an additional agreed price or on the basis of time consumed."

The Rule then continues:

"When a contractor or sub-contractor uses materials and supplies in fulfilling either a lump

sum contract, a cost-plus contract, a time and material contract with an upset or guaranteed price which may not be exceeded or any other kind of contract except one falling in class (d) above, he becomes the ultimate consumer thereof. The person or vendor who sells such materials and supplies to such contractor or subcontractor is making sales at retail to him and is required to collect the tax from him based upon the receipt from such sales.

"In cases falling in class (d) above, the contractor or sub-contractor is deemed to be selling tangible personal property at an agreed retail price and he is required to collect the tax from his purchaser based upon the amount of the receipts from such sales. A vendor selling to such contractor or sub-contractor is not required to collect the tax from him but must obtain from him a resale certificate."

The foundation for the Comptroller's rule relating to Class (d) contracts contained in Rule 53 is by no means clear to us, and a memorandum to contractors and their suppliers issued by the Comptroller in March, 1951, throws no light on the origin of the Class (d) ruling, and seems really to contradict it, without explanation. If Class (d) had been omitted from Rule 53 and the substance of the memorandum had been inserted instead of it, the second question in this case could scarcely have arisen. It may be noted, however, that the memorandum appeared several months after the last contract involved in this case had been entered into. The substance of the memorandum is that sales and use tax exemptions are available to building contractors working on lump sum or cost plus contracts in only two types of cases. The first type covers situations (as in the *McShain Case*) where materials purchased by contractors are to be incorporated in a completed job for the State or a political subdivision thereof, or for a charitable, educational or like corporation. The

second is available to contractors who are engaged in performing lump sum or cost plus contracts and who are, in addition, engaged in selling building materials; but it is available only with respect to this second part of a contractor's business. On the first part the contractor must pay the tax on materials purchased to fulfill building contracts.

In substance, and despite the understandable efforts of both Steiner and the Railroad to bring purchases of materials to be used by Steiner in performing its contracts with the Railroad within the terms of Class (d) contracts as described in Rule 53, we think the stipulated facts were at least fairly susceptible of the legal interpretation which the Comptroller placed upon them. That is, in short, that the sales to Steiner of the materials upon which the taxes here involved were assessed were within the definition of "sale at retail" under the Retail Sales Tax Act and under the Use Tax Act, since they were sales of building materials to a contractor for use or resale in the form of real estate, and that each of them falls within either Class (a) (b) or (c) of the types of contracts enumerated in Rule 53. The nature of each of the 47 contracts is clearly shown. Every one of them called for the making of repairs or alterations to existing structures or additions thereto, or additions in the form of new buildings or structures to some facility of the Railroad, and in every instance the end product was to constitute real estate. We think that the evidence was sufficient to support the Comptroller in finding that the Railroad undertook to purchase and pay for these materials when, and only when, they had been incorporated into real estate, and that these materials were sold and were intended to be sold by Steiner to the Railroad only as and when incorporated in a completed job which (when completed) constituted real estate. That, we think, is the substance of the contracts; and we do not think that the inclusion of provisions in the contracts seeking to cast them in the mold of sales of tangible personal property as such, alters

the essential nature or effect of the contracts. Likewise, the allocation of price as between materials on the one hand and labor or other items on the other, does not change the nature of the contracts. Furthermore, an examination of a tabulation contained in Plaintiff's Exhibit No. 7 filed with the stipulation shows, in some instances, such wide variations under the 29 contracts upon which the appellant chiefly relies, as between the price charged the Railroad for materials and the cost of those materials to Steiner, and also such variations in Steiner's indicated margin of profit on materials as between different jobs, as to strengthen our view that the Railroad was not acquiring the building materials as such, but only as incorporated in completed real estate projects. It seems probable that a considerable part of these variations may be due to the fact that Steiner employed sub-contractors on most contracts, but this does not weaken our view that essentially the contracts between Steiner and the Railroad called for finished jobs in the form of real estate. It would make no real difference in such contracts whether particular materials were furnished by Steiner or a sub-contractor.

Counsel for the Comptroller conceded at the argument that, assuming the Railroad's exemption to be valid, it could have purchased the materials itself tax-free and could then turn them over to Steiner for use on these jobs. The prices and costs to which we have just referred make it clear, we think, that what was actually done in these cases was far from what might have been done if the Railroad had made the purchases itself or if Steiner had, in effect, been its agent in making them.

If the provisions of Rule 53 relating to Class (d) contracts therein described would produce in this case a result at variance with the views above expressed, they would, we think, go beyond the permissible limits of administrative interpretation, since they would, on the facts of this case, nullify the applicable statutory definitions of the term "sale at retail" and would grant an exemption where the statutes grant none.

We accordingly hold that the contractor is not entitled to an abatement of the taxes here involved on the basis of these contracts involving the sale of building materials to the Railroad as tangible personal property, and not as real estate.

Since our conclusions are adverse to the contentions of the appellant on both of the questions presented, the order appealed from will be affirmed.

*Order affirmed, with costs.*