## COMPTROLLER OF THE TREASURY, RETAIL SALES TAX DIVISION *v.* PITTSBURGH-DES MOINES STEEL COMPANY

(Two Appeals in One Record)

[No. 219, September Term, 1962.]

134

*Decided March 19, 1963.*

The cause was argued before HENDERSON, HAMMOND, PRESCOTT, MARBURY and SYBERT, JJ.

*Edward F. Engelbert, Attorney, Retail Sales Tax Division,* with whom were *Thomas B. Finan, Attorney General,* and *Robert S. Bourbon, Assistant Attorney General,* on the brief, for the appellant and cross-appellee.

*Francis D. Murnaghan, Jr.,* with whom were *Venable, Baetjer & Howard* on the brief, for the appellee and cross-appellant.

Brief of *amicus curiae* filed on behalf of the United States by *Louis F. Oberdorfer, Assistant Attorney General of the United States, Lee A. Jackson, I. Henry Kutz* and *Thomas A. Skornia, Attorneys, Department of Justice, Joseph D. Tydings, United States Attorney,* and *Robert W. Kernan, Assistant United States Attorney.*

PRESCOTT, J., delivered the opinion of the Court.

In April, 1961, the Comptroller of the Treasury, the appellant and cross-appellee (often hereafter referred to as the appellant), made an assessment, for the period June 1, 1960, through January 30, 1961, for sales taxes against Pittsburgh-Des Moines Steel Company, the appellee and cross-appellant, (often hereafter referred to as the appellee) of $17,980.65, representing tax on materials incorporated into the Woodrow Wilson Memorial Bridge, constructed by Pittsburgh under a lump-sum contract with the Department of Commerce of the United States Government. In addition, an assessment of $2,409.18 was imposed on rentals of floating equipment used by Pittsburgh in the construction of the bridge. Following a formal hearing before the Comptroller, the hearing officer sustained the entire assessment. An appeal was taken by Pittsburgh to the Circuit Court for Anne Arundel County, where Judge Duckett abated the assessment against the materials, but sustained the assessment on rentals. Both parties appealed.

The appeal presents four questions:
1. Does Rule 70 of the sales tax rules and regulations discriminate against the appellee by exempting certain sales to contractors with the State of Maryland and its political subdivisions while taxing sales to federal contractors?

2. If Rule 70 discriminates against the appellee, is such discrimination unconstitutional?
3. If the Court finds there is unconstitutional discrimination against the appellee, what is the result?
4. Does the Maryland sales tax apply to rentals of tangible personal property?

The facts are few and undisputed: assessments were made against Pittsburgh as above noted, and, during the time of the construction of the bridge involved, Maryland did not assess a sales or use tax on materials which were incorporated into "jobs" under contracts with the State of Maryland, or its political subdivisions.

## I

The appellant argues that under the facts of this case, there has been *no* discrimination against Pittsburgh. He asserts that the sales tax has been imposed by statute (Code, 1962, Cum. Supp., Art. 81, § 324, (f) (3), and § 325) on the sale to all contractors of tangible personal property to be used in constructing real estate; hence contractors with "the Federal Government are, of course, included and contractors for the State are also included except for the provisions of Rule 70." [1]

The latter part of the above quotation cannot be sustained. The Comptroller has no power or authority to create an exemption by Rule. Rule 70 derives whatever force it has from the fact that it is a correct interpretation of the statutes promulgated by the Legislature. Article 81, § 326 (a), exempts from the sales tax "sales to the State of Maryland or any of its political subdivisions." In *John McShain, Inc. v. Comp-*

---

1. "Contractors who are performing jobs for the State of Maryland or any of its political subdivisions or a nonprofit religious, charitable, scientific, literary or educational institution or organization located within the State of Maryland on a lump-sum basis are not required to pay the tax on materials and supplies which will be incorporated into the job. * * *.

\* \* \*

"Contractors who are working on lump-sum, cost plus a fixed fee, or cost plus contracts containing an upset or guarantee clause with the Federal Government must pay the tax on all personal property which they purchase in fulfilling such contracts."

*troller,* 202 Md. 68, 95 A. 2d 473, (wherein it was conceded that the Comptroller lacked the power to create an exemption beyond that granted by statute) this Court upheld a part of Rule 70 (as it now reads), and held that the exemption applied when the tangible personal property was acquired through an intermediary contractor, as well as when it was acquired directly from a supplier. Cf. *Comptroller v. Joseph F. Hughes,* 209 Md. 141, 120 A. 2d 343. Hence, we see that the exemption of sales to the State of Maryland and its political subdivisions stems from Article 81, § 326 (a), and the exemption in Rule 70 to contractors who are performing jobs for the State or its political subdivisions has been confirmed by this Court as a proper interpretation of the exemptions created by statute.

It is impossible, under the adjudicated cases, to sustain the Comptroller's claim that the record discloses *no* discrimination against the appellee as a contractor with the Federal Government. In *Phillips Chemical Co. v. Dumas School Dist.,* 361 U. S. 376, the State of Texas had imposed a tax upon lessees of tax-exempt real estate owned by the Federal Government. This tax was measured by the full value of the property. However, by Texas law a distinctly lesser burden was placed upon the lessees of tax-exempt property owned by the State, or its political subdivisions. Under these circumstances, the Supreme Court stated: "The discrimination against the United States and its lessee seems apparent."

In 1961, the Supreme Court again had occasion to consider the question of discrimination against the United States and its lessees. In *Moses Lake Homes v. Grant County,* 365 U. S. 744, Grant County, pursuant to the laws of the State of Washington, attempted to tax the full value of the buildings and improvements on privately owned Wherry Act leaseholds of housing developments on a federally owned Air Force base, although, under the laws of Washington, other leaseholds, including privately owned leaseholds of tax-exempt State lands, were taxed at a lower valuation. The Court quoted from *United States v. City of Detroit* (355 U. S. at 473) as follows: "It still remains true, as it has from the beginning, that a tax may be invalid even though it does not fall directly on the United States if it operates so as to discriminate against the Govern-

ment or those with whom it deals." It then followed the *Phillips Chemical Co.* case, *supra*, and held the tax to be unconstitutional and void, because it discriminated against the United States and its lessees.

These two cases dealt with "property" taxes, but it has been held that the principles there involved are equally applicable in the case of sales taxes. The State of Illinois imposed a retailer's occupation tax (a tax on the seller's privilege to sell tangible personal property at retail based on the amount of the sales price) upon the vendors of tangible personal property. An exemption was granted to vendors to the State and its political subdivisions, but no such exemption was afforded vendors to the Federal Government.

In *United States and Olin Mathieson Chemical Corp. v. Dep't of Revenue of State of Illinois,* 191 F. Supp. 723 (1961) (D.-C., N.D. Ill.), a three-judge Federal Court stated that in its view a retailer who deals with the Federal Government falls within the same class as a retailer who deals with the State of Illinois, and it was very difficult to perceive a reasonable distinction which grants the State freedom from contributing to the cost of government and imposes the burden on the Federal Government. It then pointed out that the imposition of the tax on one and not the other permitted the State to deal with retailers at a lower cost and imposed an increased cost upon the Federal Government dealing with the same class of persons. The tax was held to be unconstitutional and void as discriminating against the Federal Government, or those with whom it dealt. The State of Illinois appealed to the Supreme Court.

While this appeal was pending, the Supreme Court of Illinois found the exemption section of the occupation tax law to be unconstitutional. Thereafter, the General Assembly of Illinois enacted an exemption section, which did not exempt the tax on sales to the State or its political subdivisions, but did exempt charitable institutions. The Supreme Court vacated the judgment "in the light of developments which have occurred," and remanded the case for further consideration. 368 U. S. 30. On remand, the case was tried on the issue of whether the exemption of charitable institutions created an unconstitutional

discrimination. The Court determined that it did not, but issued an injunction restraining the collection of taxes on the proceeds of sales to the Government "for the period when the State of Illinois did not assess or collect any taxes with respect to proceeds of sales to the State of Illinois," or its political subdivisions. This determination was affirmed by the Supreme Court. *United States v. Dep't of Revenue,* 371 U. S. 21. The three-judge Federal Court was correct, we think, in determining that the same principles enunciated in *Phillips Chemical Co.* and *Moses Lake Homes, Inc.* were applicable to sales taxes, and we hold that the record discloses discrimination against the Federal Government and those with whom it dealt. See also *People v. Isaacs,* 176 N. E. 2d 889 (Ill. 1961).

## II

The appellant's next contention is that assuming the law does discriminate against the appellee, such discrimination is not unconstitutional, because there is "a reasonable basis for treating state contractors as one class and federal contractors as another."

At the outset of the consideration of this contention, we note that there seems to be a considerable difference of opinion in the briefs as to the tests or standards to be applied in determining what, or how much, discrimination by a State against the Federal Government, or those with whom it deals, is necessary to render such discrimination unconstitutional.

The brief of the United States, as *amicus curiae,* argues that the classifications and discriminations permissible under the Equal Protection Clause have nothing whatever to do with the problems herein involved, claiming that they should be solved solely by reference to the Supremacy Clause of the United States Constitution. It points to the fact that the seminal case upon the subject, *McCulloch v. Maryland,* 4 Wheat. 316, was decided fifty years before the Fourteenth Amendment was adopted. It quotes from *Phillips Chemical Co., supra,* wherein the Court said: "We have made it clear, in the equal protection cases, that our decisions in that field are not necessarily controlling where problems of intergovernmental tax immunity are involved. * * * But where taxation of the private use of

the Government's property is concerned, the Government's interests must be weighed in the balance," and from the opinion in *United States v. Allegheny County,* 322 U. S. 174, 191, to the following effect: "The questions in this case [taxation by a State of property owned by the Federal Government, in the custody of its bailee] do not arise under the Fourteenth Amendment. They depend on provisions adopted and principles settled long before the Fourteenth Amendment and which exist independently of it." It also cites *Martin Co. v. State Tax Comm.,* 225 Md. 404, 421, 171 A. 2d 479, where Chief Judge Brune, for the Court, said: "In view of the conclusion which we have reached [on the facts of the case] we do not find it necessary to express an opinion on the question of possible discrimination against the Government on the basis of either statutory provisions or actual tax administration. Of course, no such discrimination would be permissible." Consequently, the *amicus curiae* concludes that *any* State tax "levied in a discriminatory manner against those who deal with the Federal Government is prohibited and invalid."

The Comptroller counters by claiming that the tests of discrimination used in the equal protection cases are applicable here; that the last clause of Article 15 of the Declaration of Rights ["yet fines, duties or taxes may properly and justly be imposed, or laid with a political view for the good government and benefit of the community"] permits a higher degree of discrimination in imposing excise taxes than in imposing property taxes; that in the *Phillips Chemical Co.* and *Moses Lake Homes, Inc.* cases, *supra,* there is no discussion (with the possible exception of *Phillips*) "of what might constitute discrimination"; and in *Phillips Chemical Co.,* the Court, after pointing out that discrimination against the United States and its lessees was apparent, stated, "the question, however, is whether it can be justified," which can only mean that even if there be admitted discrimination, the statute creating the discrimination is not unconstitutional if the discrimination can be justified.

We find it unnecessary to answer these contentions in detail, or to lay down a rule relative to the tests and standards to be applied in all cases where it is claimed that a State tax dis-

criminates against the Federal Government and those with whom it deals. For the purposes of this case, we shall adopt the simple test set forth by the Supreme Court in *Phillips Chemical Co., supra,* when it said: "The imposition of a heavier tax burden on lessees of federal property than is imposed on lessees of other exempt public property must be justified by significant differences between the two classes. * * *. * * * where taxation of the private use of the Government's property is concerned, the Government's interests must be weighed in the balance. *Accordingly, it does not seem too much to require that the State treat those who deal with the Government as well as it treats those with whom it deals itself* (italics ours)."

The appellant argues this contention (No. II) elaborately, but an analysis of his brief discloses the following is the claimed "reasonable basis" for placing state and federal contractors in different classes: "In the case at bar, the distinctions are quite evident. The exemption of State contractors does not increase the burden on anyone else. As a matter of fact, it lessens the burden on all since it is perfectly obvious that there are expenses attendant upon the handling of any tax funds * * *. The direct benefit to the State and its political subdivisions is so amply revealed in the State's budget, that it is not necessary to discuss it here. Rule 70 does not set up a classification based on sovereignty but is merely a common sense application of the fact that there can be no profit in paying the right hand with the left. * * *. The point we [the Comptroller] make is that the exemption for State contractors does not increase the tax burden of other contractors or taxpayers but decreases the tax burden on all."

We do not find the argument persuasive. The argument that the exemption lessens the burden on the State because "there are expenses" incurred in the collection and handling of tax funds and that there is a "direct benefit" to the State and its subdivisions applies with equal force when the Federal Government is considered, and it weakens, more than it strengthens, the appellant's position. And practically all, if not all, of the above argument has been answered adversely to the Comptroller in the cases we have cited above. We are unable to discover "significant differences" between contractors with the

Federal Government and contractors with the State of Maryland, or its political subdivisions — the classes erected by our sales tax law. A contractor who deals with the Federal Government falls, we think, within the same class as a contractor with the State of Maryland, or its subdivisions. Where the State creates an exemption [2] from the general classification of sales to contractors who purchase tangible personal property for the construction of real estate on the legally supportable basis of contracting with the State of Maryland, it is because such contractor deals with a governmental entity. When the sales tax law exempted contractors who deal with the State and its subdivisions, but failed to exempt contractors who deal with the Federal Government, the Legislature subdivided contractors with governmental entities into, at least, two divisions: those who contract with the State and its subdivisions and those who contract with the United States. Such an exemption, to be legally justifiable, must fall alike on all who are similarly situated and must include contractors with the Federal Government. *United States v. Dep't of Revenue of State of Illinois, supra.* Cf. *Phillips Chemical Co. v. Dumas School Dist.* and *Moses Lake Homes, Inc. v. Grant County,* both *supra.* We agree with the three-judge Federal Court when (191 F. Supp. at p. 729) it said:

"It is difficult for us to perceive a reasonable distinction which grants one freedom from contributing to the cost of government and imposes the burden upon the other. Further, the imposition of the tax upon one and not the other permits the State to deal with retailers at a lower cost and imposes an increased cost upon the Federal Government dealing with the same

2. No attack is made in the instant case on the power of the State to create an exemption. But statutes which tax one class while exempting another class necessarily impose a greater burden upon the person taxed than would be the case if the exempted class were included. However, such statutes do not create a constitutional inequality, if all who should be included in the same class are included and treated alike. United States v. Dep't of Revenue of State of Illinois, supra; Hart Refineries v. Harmon, 278 U. S. 499, 502.

class of persons. Assuming that the statutory exemption may have the laudable public purpose of reducing governmental costs, it is equally applicable to the Federal Government thus benefiting all citizens of the United States, including the citizens of the State of Illinois."

See also *United States v. City of Detroit, supra,* 355 U. S. at p. 474.

The above answers substantially all of the appellant's argument under this heading. However, there is one further claim which we shall answer. The Comptroller states that, beginning in 1947 when the sales tax was first imposed in Maryland, the General Assembly adopted a plan whereby the State paid over to its political subdivisions certain taxes, collected by the State, to enable the subdivisions to meet "their deferred building requirements and other expenditures required by the Second World War * * *," and the sales and use tax laws were adopted "to fill the gap occasioned by the payment" of the aforementioned funds to the political subdivisions. There is nothing in the record to show that the sales tax is earmarked or allocated for any specific purpose, and, presumably, it goes into the general funds of the State. But be that as it may, we think the short, but complete, answer to this claim is, that no matter for what purpose the State of Maryland imposes its sales tax, it does not justify the State in discriminating, invidiously, against the Federal Government.

We, therefore, hold that the record fails to show "significant differences" between contractors with the Federal Government and contractors with the State and its subdivisions; and when the Legislature enacted Article 81, § 326 (a), which exempted sales to the State and its political subdivisions but did not exempt sales to the Federal Government, it failed to "treat those who deal with the Government as well as it treats those with whom it deals itself." Hence, the tax assessed against Pittsburgh for the sales on tangible personal property incorporated into the bridge is invalid and void, and cannot lawfully be collected.

### III

The appellant suggests under this heading that if this Court

finds an unjustifiable discrimination, the proper way of removing such discrimination "is by striking down Rule 70,[3] the true source of any discrimination which may exist," and then state and federal contractors will be taxed alike. As we pointed out above, the true source of the exemption to contractors who deal with the State and its subdivisions is Article 81, § 326 (a). Hence, if Rule 70 were striken down, Article 81, § 326 (a) would remain in force and effect, and the discrimination would still exist.

We think that instead of striking down Article 81, § 326 (a) and Rule 70, the method suggested by both the appellee and the *amicus curiae* is sound, and the proper mode of dealing with the situation. Article 81, § 326 (a), calling for nontaxation of state contractors, creates a valid and permissible exemption (Article 15, Declaration of Rights. Cf. *Oursler v. Tawes,* 178 Md. 471, 485, 13 A. 2d 763; *John McShain v. Comptroller, supra; Comptroller v. Joseph F. Hughes, supra*). In addition to Article 81, § 326 (a), Article 81, § 326 (f) prohibits the taxing of "sales which are not within the taxing power of this State under the Constitution of the United States." Thus the Legislature has incorporated into the statute itself a federal constitutional standard.[4] That standard requires, as we pointed out above, that there be no invidious discrimination between the treatment afforded federal and state contractors. Consequently, when the Legislature carried out its intention to exempt state contractors (§ 326 [a]), sales to federal contractors were no longer "within the taxing power of this State under the Constitution of the United States." It would seem that this construction will permit the whole of the legislative fiscal program (as it applies here) to stand as it was originally projected, and the result is amply warranted by the canons of construction commonly applied by this and other Courts. See *Dept. of Tide. Fisheries v. Sollers,* 201 Md. 603, 613, 95 A. 2d 306, wherein the Court said, "it is presumed that the Legisla-

---

3. The Rules and Regulations adopted by the Comptroller are authorized by Article 81, § 365 (a).

4. Cf. Martin v. State Tax Comm., supra; Tawes v. Aerial Products, 210 Md. 627, 124 A. 2d 805; Steiner Const. Co. v. Comptroller, 209 Md. 453, 121 A. 2d 838.

ture intends to impart to each of its enactments a meaning that will render it operative and effective." We hold that the second paragraph of Rule 70, as quoted in footnote (1), is unconstitutional, null, and void insofar as it attempts to tax contractors under a lump-sum contract with the Federal Government. If Maryland desires to tax federal contractors, it may do so in the same manner as the Illinois Legislature did after its state exemption was declared invalid (see above), *i.e.*, change the law so as to tax state contractors also. Cf. Smith-Hurd Ann. Stats., Ch. 120, § 441, as amended by Act of July 31, 1961, Illinois Laws, 1961, p. 2312, § 1.

## IV

The cross-appellant, Pittsburgh, here disputes the validity of the assessment on rentals of floating equipment. In 1955, the Legislature amended the then § 320 (d), now § 324 (d), of Article 81.[5] Pittsburgh argues that the definition of "sale" and "selling," by including "rental" within the "sub-definition of 'consideration,' was not intended to pervert the normal meaning of 'sale' or 'selling'." Further, and this is the nub of its contention here, it claims that the inclusion of the word "rental"

---

5. The following is the language used as it appears in Ch. 332 of the Acts of 1955:

"320 (d) [now 324 (d)] 'Sale' and 'Selling' mean any transaction whereby title or possession, or both, of tangible personal property is or is to be transferred by any means whatsoever for a consideration *including rental, lease or license to use, or royalty,* by a vendor to a purchaser, or any transaction whereby services subject to tax under Section 321 of this sub-title are rendered for consideration to any purchaser by any vendor. Such consideration may be either in the form of a price in money, rights or property or by exchange or barter, and may be payable immediately, in the future, or by installments. NOTHING IN THIS SUB-SECTION SHALL APPLY TO THE RENTING OF TEXTILES, THE ESSENTIAL PART OF WHICH INCLUDES THE RECURRING SERVICE OF LAUNDERING OR CLEANING THEREOF, NOR THE RENTING OF MACHINES AND EQUIPMENT USED EXCLUSIVELY FOR AGRICULTURAL PURPOSES."

Explanation: Italics indicate new matter added to existing law. [Brackets] indicate matter stricken from existing law. CAPITALS indicate amendments to bill.

in the statute was not intended to impose a tax on short-term rentals without options to purchase, but was done for the sole purpose of making clear that the sales tax applies to transactions which are *in actual fact sales,* although they are disguised, for various purposes, as rentals.[6]

Such a construction would be a strained one, and necessitate ignoring the plain meaning of the language employed in the statute and the purpose thereof expressed in its title. The title, *inter alia,* states that the Act is "to impose the [sales] tax on rentals and leases of CERTAIN tangible personal property; * * * [to impose] the tax on leases of motor vehicles; * * * and to repeal and re-enact, with amendments, [Section] * * * 368 (f) (2) * * * of Article 81 * * *, subtitle 'Maryland Use Tax' [which is complementary to the sales tax] * * * amending the definition of 'Purchase' to include lease and rentals." Cf. *Kimball-Tyler v. Baltimore City,* 214 Md. 86, 96, 133 A. 2d 433.

Although the phraseology of the first sentence of § 324 (d) can, perhaps, be properly termed clumsy, and probably few, if any, English teachers would commend it, it, together with the title and the remainder of the section, we think, makes it clear that the Legislature intended to include all kinds of rentals of tangible personal property (not expressly excluded) in the sales tax law. The phrase "including rental, lease or license to use, or royalty," does not merely modify the single word "consideration," which precedes it, as argued by Pittsburgh, but it goes back and is to be considered in conjunction with everything that has preceded it in the sentence. In other words, "sale" and "selling" mean any transaction whereby title or possession, or both, of tangible personal property is, or is to be, transferred by any means whatsoever for a consideration, and any such transaction shall include rental, lease or license to use, or royalty (on tangible personal property), by an owner to a transferee. This construction is additionally bolstered, we think, by the exclusionary provisions of the subsection, whereby "renting" of such textiles as diapers, towels, barbers' blouses, etc. (under certain conditions), and the "rent-

---

6. Cf. Beckwith Machinery Co. v. Matthews, 190 Md. 182, 57 A. 2d 796; Alban Tractor Co. v. State Tax Comm., 219 Md. 593, 150 A. 2d 456.

ing" of machines and equipment used exclusively for agricultural purposes are excluded from the Act. We hold that the trial court was correct in sustaining the assessment for rentals of tangible personal property.

> *Order affirmed. The Comptroller to pay 6/7 of the costs, and Pittsburgh 1/7 thereof.*