UNITED STATES of America.
Plaintiff,

v.

**I. L. CLAYTON, Successor to L. Sneed High, Successor to William A. Johnson, Commissioner of Revenue of the State of North Carolina, Defendant.**

**Civ. No. 1487.**

United States District Court
E. D. North Carolina,
Raleigh Division.

Sept. 15, 1965.

Appeal Dismissed May 2, 1966.
See 86 S.Ct. 1379, 1383.

---

Robert H. Cowen, U. S. Atty., Raleigh, N. C., Louis F. Oberdorfer, Dept. of Justice, Washington, D. C., for plaintiff.

Thomas Wade Bruton, Atty. Gen. of N. C., Peyton B. Abbott, Deputy Atty. Gen., Charles D. Barham, Asst. Atty. Gen., Raleigh, N. C., for defendant.

Before BELL, Circuit Judge,. and BUTLER and CRAVEN, District Judges.

J. SPENCER BELL, Circuit Judge.

In this action instituted by the United States,[1] a permanent injunction has been sought restraining the enforcement of certain provisions of the North Carolina Sales and Use Tax Act[2] [hereinafter the Act] and the regulations issued thereunder on the ground that they are unconstitutional.[3] The plaintiff charges that the Act as drafted and administered invidiously discriminates against it,[4] resulting in a violation of both the Fourteenth Amendment to the United States Constitution and section 3 of article V of the North Carolina Constitution.[5] This is true, the United States asserts, because the Act and the

1. Our jurisdiction in this case is derived from 28 U.S.C.A. §§ 1331, 1345.

2. N.C.Gen.Stat. § 105–164.1 et seq. (1965). The key provision, insofar as this proceeding is concerned, is § 105–164.14(c).

3. Accordingly, this action has been heard before a panel consisting of three judges, as required by 28 U.S.C.A. § 2281.

4. The plaintiff's complaint also charges that the Act infringes the immunity from state taxation which the federal government enjoys under the federal constitution. We think this contention is without merit for the reasons and on the basis of the authority indicated in United States v. Dep't of Revenue of State of Illinois, infra 191 F.Supp. at 727–728. See particularly United States v. City of Detroit, 355 U.S. 466, 469–473, 78 S.Ct. 474, 2 L.Ed.2d 424 (1958).

5. Because of our decision on the plaintiff's Fourteenth Amendment claim, we find it unnecessary to pass upon the state constitutional contention which has been advanced.

regulations allow certain groups, specifically counties and incorporated cities and towns in North Carolina, to claim and collect from the defendant a refund of the taxes paid on certain purchases of tangible personal property [6] in North Carolina while a comparable procedure is not provided for the benefit of the United States and its agencies. After a careful consideration of the relevant authorities, we are of the opinion that the plaintiff's Fourteenth Amendment argument is a meritorious one and entitles it to summary judgment and injunctive relief.

The events leading to the commencement of this suit can be concisely stated. During the Government's fiscal year 1962, ending June 30, 1962, sales taxes were collected from contractors performing construction and repair contracts in North Carolina for the Department of the Army.[7] These taxes were imposed upon the purchase by the contractors of building materials, supplies, and fixtures and equipment utilized in the perform-

ance of the contracts previously mentioned, and all of these items either became a part of or were annexed to the structures being built or repaired for use by the plaintiff in the conduct of its governmental activities. The taxes were passed on by the contractors to the Government, and in due course, a timely application for a tax refund was filed. The refund application was subsequently denied by the defendant on the ground that he was without authority under the Act to grant it.

We note at the outset that this appears to be an appropriate case for summary judgment,[8] since the Government and the defendant seem in agreement on all material aspects of this action except the claim that the Act invidiously discriminates against the United States. Interestingly enough, both parties have cited Phillips Chem. Co. v. Dumas Independent School Dist., 361 U.S. 376, 80 S.Ct. 474, 4 L.Ed.2d 384 (1960), and United States v. Dep't of

6. The purchases in issue are indirect purchases, ones made by others but for the ultimate benefit of the local governmental units involved. These indirect purchases can be clearly illustrated by considering a situation where a contractor enters into a contract with a county (or incorporated city or town) to construct or repair a building. The contractor makes the actual purchase of tangible personal property (e. g. building materials and supplies, fixtures, and equipment) and pays the state sales tax on the purchase to his supplier. The contractor then uses the personal property purchased to carry out his contract with the county, but the sales tax he paid is passed along to the county as part of the contractor's cost of the project (or it has been figured as an item of costs in the contractor's bid if the contract is for a flat figure rather than on a cost-plus basis). Thus both the ultimate benefit of the personal property purchased and the ultimate burden of the sales tax rest upon the county, and for that reason, the county is allowed to claim a refund for the sales taxes paid by the contractor.

No problem is presented regarding direct purchases of tangible personal property. Counties and incorporated cities and towns are entitled to claim a refund on these purchases, and direct purchas-

es by the United States or its agencies are not subject to state taxation. 1 CCH State Tax Rep. (North Carolina) ¶¶ 60–203, 60–204.

Both direct and indirect personal property purchases by the State of North Carolina and all other political subdivisions except counties and incorporated cities and towns are subject to state taxation, and no tax refund is authorized by the relevant statutory provisions.

7. The plaintiff claims that $65,833.24 in taxes was collected from these contractors during the 1962 fiscal year. The defendant asserts in its answer that the taxes collected were substantially less than the amount claimed by the plaintiff, but he offers no alternative collection figure. The documents filed with the court by the plaintiff make it clear that the projects for the Department of the Army are only one example of the harm the United States claims to be suffering because of the allegedly unconstitutional discrimination; and if it is successful on the merits, the United States wants to recover the state taxes paid on all construction and repair work in North Carolina by and for all federal departments and agencies since July 1, 1961.

8. Rule 56, Federal Rules of Civil Procedure.

Revenue of State of Illinois, 191 F.Supp. 723 (N.D.Ill.), vacated and remanded, 368 U.S. 30, 82 S.Ct. 146, 7 L.Ed.2d 90 (1961), on remand, 202 F.Supp. 757, aff'd per curiam, 371 U.S. 21, 83 S.Ct. 117, 9 L.Ed.2d 95 (1962), as support for their position. In view of this unusual unanimity of opinion regarding the controlling legal authority, some discussion of the decisions referred to above seems in order.

In the *Phillips* case, the plaintiff had leased from the federal government certain property in Texas on which it was engaging in the commercial manufacture of ammonia. The defendant assessed a tax measured by the estimated full value of the leased premises against the plaintiff, and a suit to enjoin the tax collection was commenced. It was conceded that had its lessor been the State of Texas or one of its political subdivisions, the plaintiff would have been subject to no property tax liability at all under Texas law. A divided Supreme Court of Texas upheld the assessment, but the United States Supreme Court, with Chief Justice Warren writing for a unanimous Court, reversed, characterizing the challenged Texas taxing provisions as a "substantial and transparent * * * discrimination against the Government and its lessees." 361 U.S. at 387, 80 S.Ct. at 481. It is true, as the defendant here calls to our attention, that Chief Justice Warren in *Phillips* did not hold the Texas taxing provisions constitutionally in-

firm simply because lessees of the United States were taxed differently from lessees of the state or its political subdivisions. Instead he stated that "[t]he imposition of a heavier tax burden on lessees of federal property than is imposed on lessees of other exempt public property must be justified by significant differences between the two classes." 361 U.S. at 383, 80 S.Ct. at 479. After examining at some length the various considerations suggested in support of the different treatment to which the United States was subjected, he concluded that none of them would justify the discrimination which was present.

We note that one of the claims advanced and rejected in *Phillips* [9] bears a striking resemblance to the primary justification for the North Carolina tax provisions suggested by the defendant in this case, namely that these provisions are simply the means the state has chosen to give the counties and incorporated cities and towns some financial assistance in providing the expanding services required by their rapidly increasing populations. While it is permissible and perhaps even laudatory for the State of North Carolina to assist financially its subordinate governmental units, in doing this it may not sacrifice the interests of the federal government.[10] To paraphrase Chief Justice Warren's language in *Phillips,* it does not seem too much to require that a state treat the

9. The claim there was that federal leasing of property had a more serious impact upon the finances and operations of local government than leasing by the state did, the implication being that while it could endure the exclusion from the tax lists of property utilized for commercial use but leased from the state or one of its political subdivisions, local government could not financially live with similar treatment for property leased from the federal government.

10. It may be, as counsel for the defendant suggests, that the North Carolina legislature could amend the Act by deleting the authorization for all refunds and then make direct appropriations from the gen-

eral revenue funds of the state to the counties and incorporated cities and towns, thereby accomplishing by direct grants the same financial assistance which now results from the refund procedure. The situation hypothesized by counsel, however, is not the one we are now considering, and we are content to limit our decision to the issues presently before us. Moreover, unconstitutional discrimination in state statutes can always be eliminated by deleting the discriminatory provisions from the statute, and quite frequently the same result accomplished by the discriminatory procedures could be effected by resorting to alternative procedures which are free from constitutional defects.

federal government as well as it treats itself or its political subdivisions.[11]

The preceding discussion should indicate that the defendant's efforts to distinguish the *Phillips* case leave us unpersuaded. It is argued that because of the operation of the Texas taxing provisions, the federal government there was placed at a competitive disadvantage in leasing its property, whereas here the controverted state taxes are imposed uniformly upon purchases made by all contractors, regardless of for whom they are building or repairing structures in North Carolina. We make two observations about this argument. First, there is no suggestion in the *Phillips* opinion that the Court decided that case as it did either solely or predominantly because of any competitive disadvantage considerations; rather, it appears that the Texas tax was overturned because it discriminated without justification against the United States. Second, even making the matter of the federal government's competitive disadvantage a crucial inquiry will not save the present tax, for it is not disputed that the *result* of the Act and regulations is that the United States is required to pay a larger *net cost* for the construction of a building than would be the case if the identical structure were being built for a North Carolina county or incorporated city or town. Upon closer examination, then, it becomes apparent that the uniform treatment which the contractors receive only serves to temporarily obscure the nonuniform treatment which exists for the real parties in interest, the governmental units which have construction work to contract. Since it is substance and not form in which we are interested in this case, it is proper that we consider not merely the surface appearance of equality but also the ultimate effect produced by the whole state tax structure.[12] Given this approach, we find this case indistinguishable in principle from *Phillips*.

Nor do we think that the result in United States v. Dep't of Revenue of State of Illinois, supra, affords any solace to the defendant. Involved in that case was an Illinois statutory provision which imposed upon retailers a tax on receipts derived from the sale of tangible personal property in that state, including sales to the federal government. However, the Illinois taxing act provided an exemption for retail sales to the state or its political subdivisions,[13] and it was this exemption which was challenged as constitutionally improper. The state contended there (as the defendant contends

11. 361 U.S. at 385, 80 S.Ct. at 480. As pointed out in footnote 6, here the United States is treated like the State of North Carolina and unincorporated cities and towns but different from counties and incorporated cities and towns in North Carolina.

12. 361 U.S. at 383, 80 S.Ct. at 479, 191 F. Supp. at 728. Cf. Lawrence v. State Tax Commission of State of Mississippi, 286 U.S. 276, 280, 52 S.Ct. 556, 76 L.Ed. 1102 (1932).

13. An exemption was also provided for retail sales to organizations and institutions organized and operated exclusively for charitable, religious, or educational purposes. Although this exemption was discussed briefly in the first opinion, 191 F.Supp. at 729, this language was later expressly withdrawn. 202 F.Supp. at 758. After the first judgment had been vacated "for further consideration in the light of the developments which have occurred since the injunction was issued," 368 U.S.

30, 82 S.Ct. 146 (1961), the exemption for sales to charitable, religious, and educational groups was challenged by the United States. In the second opinion, a divided three-judge court held that valid reasons supported the classification providing for an exemption on sales to the aforementioned nongovernmental groups while denying it on sales to governmental units, 202 F.Supp. at 759, and the Supreme Court affirmed. 371 U.S. 21, 83 S.Ct. 117, 9 L.Ed.2d 95 (1962). Accord, People ex rel. Holland Coal Co. v. Isaacs, 22 Ill. 2d 477, 176 N.E.2d 889 (1961).

There has been some discussion in the pleadings and in oral argument in this case of the fact that N.C.Gen.Stat. § 105–164.14(b) and 1 CCH State Tax Rep. (North Carolina) ¶ 60–206 authorize a tax refund to certain nongovernmental groups. We do not find it necessary to decide the constitutionality of that procedure in order to reach a conclusion in this case, and we express no opinion whatsoever upon it.

here) that the tax would pass constitutional muster because the *statute* applied to all retailers, but this argument received short shrift from the court. The practical operation of the tax, the court declared, was what it was interested in, and that approach required consideration of the *effect* of the exemption provisions. Concluding that a retailer who dealt with the United States fell within the same class as one who dealt with the State of Illinois or its subordinate governmental units, the court held that the exemption in question was invalid because it was not available to all who were similarly situated and no reasonable basis for the difference in the treatment accorded the retailers was shown.[14] Although, as the defendant stresses, the initial judgment in this case was subsequently vacated by the Supreme Court (because, among other reasons, after the Illinois Supreme Court had also held the exemption section unconstitutional, the Illinois legislature amended the taxing statute to eliminate altogether an exemption on sales to any governmental unit), we find the court's reasoning and analysis on the federal constitutional question unassailable, and we adopt it here. Furthermore, we note that this decision has been followed in at least two recent state court cases in which state taxing provisions were declared unconstitutional because they resulted in discrimination against the United States. Knapp-Stiles, Inc. v. Department of Revenue, 370 Mich. 629, 122 N. W.2d 642 (1963); Comptroller of Treasury v. Pittsburgh-Des Moines Steel Co., 231 Md. 132, 189 A.2d 107, cert. denied, 375 U.S. 821, 84 S.Ct. 58, 11 L.Ed.2d 55 (1963).

■ Having concluded that the statutory refund provision in question is unconstitutional because it discriminates invidiously against the United States, we turn to the relief which is appropriate in the circumstances of this case. In its motion for summary judgment, the plaintiff prayed that this court (1) hold the Act and regulations invalid insofar as they *impose* the taxes in controversy, (2) enter a permanent injunction against the further *assessment* and *collection* of the challenged taxes, and (3) declare that it is entitled as a matter of law to a refund of all taxes illegally collected since July 1, 1961, with the total amount of the refund to be determined at some future date at an evidentiary hearing held pursuant to an order of this court. In our judgment, however, the plaintiff's requests exceed the relief to which it is entitled.

The basis for overturning the refund provision is that it operates to place the federal government in a less advantageous position than that enjoyed by North Carolina counties and incorporated cities and towns. Were we to accede to the request that we act to prevent the *imposition* of the tax, however, we would not be requiring that North Carolina treat the plaintiff and her local governmental units in the same manner but we would in fact be placing the plaintiff in a more advantageous position than that occupied by the local governmental units. In short, we would be striking down one form of discrimination but by the same act creating another. All that the plaintiff can legitimately ask for in this case is that it be treated *the same as* the North Carolina counties and incorporated cities and towns. Therefore the United States, like everyone else, must resort to the refund procedure to recover what it is due. Accordingly, those (but only those) provisions of the Act and the regulations which operate to deny the United States a tax refund when an appropriate and timely request[15] therefor is made are hereby declared null and void. Comptroller of Treasury v. Pittsburgh-Des Moines Steel Co., supra 189 A.2d at 114

---

14. "It is difficult for us to perceive a reasonable distinction which grants one [retailer] freedom from contributing to the cost of government and imposes the burden upon the other." 191 F.Supp. at 729.

15. Of course, in the circumstances of this case, the time limitation in the statute for refund applications will not bar recovery by the United States of the taxes in question collected by the defendant prior to this opinion.

The plaintiff is also entitled to recover the taxes paid since July 1, 1961, to which it would have been entitled had the North Carolina statute during that time read as we have today ruled that the United States Constitution requires that it read. The information before us, however, is not sufficient to permit us to enter an order specifying the amount of the refund to which the plaintiff is entitled. For the purpose of ascertaining the amount of the refund, a hearing is hereby authorized before Judge Butler.[16]   28 U.S.C.A. § 2284(5).

It is so ordered.

16. If the parties are able to agree among themselves upon the refund figure to which the plaintiff is entitled, they may stipulate the amount before Judge Butler, and then no hearing would be necessary.