MEYERS, INDIVIDUALLY AND T/A MARCLAY-ODEN CO. *v.* JACHAM ENTERPRISES, INC.

(Two Appeals In One Record)

[No. 202, September Term, 1960.]

88

*Decided April 7, 1961.*

The cause was argued before BRUNE, C. J., and PRESCOTT, HORNEY, MARBURY and SYBERT, JJ.

*Bernard H. Herzfeld,* with whom were *Smalkin & Hessian,* and *Calman A. Levin* on the brief, for appellant.

*Richard C. Murray,* with whom were *Smith & Harrison* and *Marcy M. Ehudin* on the brief, for appellee.

HORNEY, J., delivered the opinion of the Court.

This appeal involves the disposition of the proceeds of a promissory note attached by a judgment creditor in the hands of garnishees (subsequently paid into court) but awarded by the court to a claimant of the attached funds after a hearing in the attachment proceeding on the motion of the attaching creditor for a judgment of condemnation absolute.

The garnishees (Ruchs, Inc., and Herman E. Ruch and Mildred M. Ruch, individually) purchased a going business, known as Sans Souci, and the premises on which the business was conducted from the respective owners thereof and delivered to the vendors of the business a promissory note for $5,000 in part payment of the purchase price. The note was duly assigned, by mesne assignments, to Jacham Enterprises, Inc. (claimant) before the attachment proceeding was filed.

In lieu of strict compliance with the terms and provisions of the Sales in Bulk Act (Code [1957], Art. 83, §§ 97-101, often hereinafter referred to as the bulk sales statute), a sales agreement was entered into by and between five parties. Louis J. Meyers, individually, and trading as Marclay-Oden Company (real estate broker and attaching judgment creditor), who had procured the Ruchs as purchasers was not a party to the agreement. The parties of the first and second parts were the vendors of the business and the owners of the premises. Certain creditors of the business, including the claimant, were designated as parties of the third and fourth parts, and the Ruchs, as purchasers, were the parties of the fifth part. The agreement, after reciting that it was made in lieu of a strict compliance with the statutory requirements

and to protect the purchasers, set forth the terms, provisions and general conditions concerning the sale and concluded with what was designated as paragraph seven (hereinafter often referred to as the "protection" clause), the pertinent provisions of which were as follows:

> "The alleged indebtedness of one T. Braden Silcott in the amount of $2291 * * * is hereby rejected by all of the parties vendors; but in order to save harmless the * * * parties of the fifth part [the Ruchs] from any successful action on the part of * * * Silcott resulting in any obligation on the part of the * * * parties of the fifth part to pay such claim, the promissory note in the amount of $5000 * * * shall be held in escrow * * * for the purpose of paying the * * * indebtedness if and when the same is legally established and as securit[y] for the payment of *any other claims for fees, commissions or creditors who shall have legally and successfully prosecuted * * * claims against any parties or against the * * * fifth parties for which the fifth part[ies] shall become liable for payment therefor* [emphasis added], and [the holders in escrow] shall hold [the] note until all claims have been paid or satisfied, at which time the * * * note shall be delivered to the * * * parties of the fourth part less any credit for payments made or encumbered against the * * * note, if any there shall be * * *."

The broker, being unable to collect his commissions after the sales had been consummated, filed suit against the vendors and owners and was awarded a judgment for the amount of the commissions claimed. When, however, the judgment proved to be of little value, the judgment creditor (Meyers) attempted to attach the proceeds of the promissory note by laying an attachment in the hands of the Ruchs as garnishees. The claimant (Jacham) countered by filing an "answer" in the nature of a claimant's petition in the attachment proceeding and, in a separate action, also sought to enter a con-

fessed judgment on the promissory note. By the consent of all of the parties, the Ruchs were allowed to pay the balance due on the note into court, and the attachment and confessed judgment proceedings were consolidated for trial.

At a hearing of the consolidated proceedings the court—upon holding that the "protection" clause (paragraph seven) of the agreement was executed for the sole benefit of the Ruchs in that the postponed payment of the balance of the purchase price, represented by the promissory note, was in effect a device to secure the Ruchs against the payment of the claims of any creditors of the vendors for which they might become liable under the bulk sales statute—dismissed the motion of the judgment creditor (Meyers) for a judgment of condemnation absolute and awarded the proceeds of the note to the claimant (Jacham).

Meyers, claiming that the words *"any other claims for fees, commissions or creditors who have legally and successfully prosecuted * * * claims against any parties"* set forth in the protection clause of the sales agreement were authority for him to recover the sales commissions due him by the vendors out of the proceeds of the note, contends (i) that the court erred in its interpretation and construction of the agreement and (ii) that the court also erred when it denied him an opportunity to present evidence concerning the circumstances surrounding the execution of the sales agreement and the intent of the parties thereto.

### (i)

The interpretation the court placed on the agreement was correct. The plain and unambiguous language used to express the intent of the parties shows that the protection clause was executed only for the benefit of the purchasers and for no other person or persons. Since the subsisting creditors had ample protection under the statute, there was no reason to provide for them in the agreement, and, despite the claim of the broker to the contrary, there is nothing in the agreement to indicate that the parties thereto ever intended to provide for the payment of his claim for commissions out of

the proceeds of the promissory note. As we read it, the protection clause simply meant that the note (or the proceeds thereof) were to be held in escrow to protect the Ruchs from having to pay the claim of a creditor that the vendors had rejected as well as the claims of other creditors, including those having claims for fees or commissions, which might be legally and successfully prosecuted against the purchasers or against any of the parties to the agreement for which the purchasers might thereafter become liable. But the clause clearly did not bestow on the broker any standing or status as a creditor that he did not have as a subsisting creditor under the statute. Thus, it is apparent that if the broker was not a subsisting creditor, or, if he was a subsisting creditor and did not pursue his remedy under the statute, then he was not entitled to have payment of his judgment for brokers' commissions out of the proceeds of the note.

It may be that the broker was not a subsisting creditor within the meaning of the bulk sales statute and for that reason was not entitled to recover the commissions due him out of the proceeds of the note. Cf. *Fidelity & Deposit Co. of Md. v. Thomas,* 133 Md. 270, 105 Atl. 174 (1918). But, even if we assume, without deciding, that he was a subsisting creditor, there are at least two reasons why his claim as a creditor under the statute cannot prevail. In the first place, since the statute was neither invoked below nor considered by the trial court, it is clear that a question presented for the first time on appeal will not ordinarily be considered. Maryland Rule 885; *Rose v. Paape,* 221 Md. 369, 157 A. 2d 618 (1960); *Tufts v. Poore,* 219 Md. 1, 147 A. 2d 717 (1959). Furthermore, a creditor in order to enforce payment of a debt by attacking a sale made under the statute must begin a proceeding either at law or in equity against the purchaser to invalidate the sale within ninety days after it was consummated. Art. 83, § 98. In the instant case, the attachment proceeding—which was in effect a proceeding against another creditor of the vendors and not one against the purchaser as such—was not instituted for more than a year after the consummation of the sale.

(ii)

Meyers also contends that the court should have received the evidence he proffered concerning the surrounding circumstances to show the real intent of the parties when the agreement was made. The answer to this contention is that it is a cardinal rule of construction that the rights and liabilities of the parties, in the absence of ambiguity, fraud, duress or mutual mistake, are to be determined by the terms of the agreement, irrespective of the intent of the parties at the time the agreement was executed. *Slice v. Carozza Prop., Inc.,* 215 Md. 357, 137 A. 2d 687 (1958). Since the sales agreement was clear and unambiguous, it follows that the parol evidence proffered by the broker bearing on the intent of the parties was properly excluded. *Weber v. Crown, Etc. Corp.,* 214 Md. 115, 132 A. 2d 857 (1957); *Ray v. Eurice,* 201 Md. 115, 93 A. 2d 272 (1952); *Insley v. Myers,* 192 Md. 292, 64 A. 2d 126 (1949); *Phoenix Pad Mfg. Co. v. Roth,* 127 Md. 540, 96 Atl. 762 (1916).

For the reasons stated the order appealed from will be affirmed.

*Order affirmed; appellant to pay costs.*